UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

RALPH BUCK PHILLIPS,

       Petitioner,

   -vs-

TERRY LAVALLEY, Superintendent,

       Respondent.

**DECISION AND ORDER
No. 10-CV-0997(MAT)**

─────────────────────────────

## I.   Introduction

Ralph Buck Phillips ("Petitioner" or "Phillips") has filed this pro se 28 U.S.C. § 2254 petition for a writ of habeas corpus. Phillips is incarcerated pursuant to a judgment of conviction entered against him on December 19, 2006, New York State County Court, Chautauqua County, following a guilty plea to one count of Aggravated Murder in the First Degree (New York Penal Law ("P.L.") § 125.26), and one count of Attempted Aggravated Murder in the First Degree (P.L. §§ 110.00/125.26). Phillips is currently serving concurrent prison terms of life without parole for the murder count and forty years to life for the attempted murder count.

## II.   Factual Background and Procedural History

### A.   Overview

After escaping from the Erie County Jail in April 2006, Phillips shot at police officers on three separate occasions, killing one officer (State Trooper Anthony Longobardo) and wounding

two others (State Troopers Donald Baker and Sean Brown).[1] During the August 31, 2006 incident which forms the basis for the convictions at issue here, Phillips shot and killed Longobardo, and shot and seriously injured Baker. Phillips was indicted by a Chautauqua County grand jury on charges of aggravated murder (P.L. § 125.26); first degree murder (P.L. § 125.27(1)(a)); attempted aggravated first degree murder (P.L. §§ 110.00/125.27(1)(a)); aggravated assault on a police officer (P.L. § 120.11); second degree burglary (P.L. § 120.25(1)(a)); and third degree grand larceny (P.L. § 155.35).

### B.   Petitioner's Arrest and Statement to the Police

On September 9, 2006, Phillips gave a statement to the New York State Police during an interview with Investigator James Newell ("Newell"). See Two-Page Statement, attached as an Exhibit to Dkt. #1-2, numbered as pages 69-70. Phillips indicated he was giving the statement because Newell promised to do everything he could to arrange for the dismissal of certain pending charges against Phillips' daughter, Patrina Wright ("Wright"), and Wright's mother, Kasey Crowe ("Crowe"). Phillips stated that as he was

---

[1]

In connection with these incidents, Phillips entered a guilty plea to first degree escape in Erie County Court, and that conviction was upheld on appeal. People v. Phillips, 56 A.D. 3d 1168 (4th Dept. 2008), lv. denied, 11 N.Y.3d 928 (2009). With regard to the Chemung County charges involving State Trooper Sean Brown, Phillips entered a guilty plea to attempted aggravated murder, attempted second degree murder, second degree criminal weapon possession, and third-degree criminal possession of stolen property. He was sentenced to an aggregate indeterminate prison term of forty years to life, plus five years of post-release supervision. That conviction also was upheld on appeal. People v. Phillips, 71 A.D.3d 1181 (3d Dept.), lv. denied, 15 N.Y.3d 755 (2010).

approaching Crowe's home, he came upon two men in camouflage. Phillips stated that the men raised their guns; he "was scared did the same." Next, Phillips, stated, he "immediately started shooting from the hip" and "[t]he two guys also were shooting." Phillips ran back into the woods and reloaded his rifle. He "thought they were bounty hunters and [he] was mad that they were after me." He claimed he "did not know that they were police." Phillips showed Newell on a map where he believed he hid his gun and backpack.

Phillips has taken contradictory positions regarding the statement, both arguing that it was coerced and that it provides him with a defense of justification. In any event, the confession became immaterial once Phillips elected to plead guilty.

### C.   The Guilty Plea

On November 29, 2006, the parties appeared in New York State Supreme Court (Chautauqua County) before Acting Supreme Court Justice Richard C. Kloch, Sr. ("Justice Kloch"). Justice Kloch noted that Richard W. Rich, Jr., Esq. ("Attorney Rich"), from the City of Chemung Public Advocate's Office, had been assigned to represent Petitioner in his then-pending Chemung and Erie County prosecutions. A.12.[2] Phillips stated that he wanted Attorney Rich to represent him in the Chautauqua County prosecution as well, and Justice Kloch court granted that request. A.12-13.

---

[2]

Citations to "A.__" refer to pages in "Exhibit A" to Respondent's Answer (Dkt. #). Exhibit A contains the Settled Record on Appeal and includes, <u>inter alia</u>, the plea transcript and the parties' appellate briefs.

After arraigning Phillips on the seven charges, Justice Kloch noted that Phillips had reached an agreement with the prosecution, pursuant to which he would enter a guilty plea to counts one and three of the indictment (aggravated first degree murder and attempted aggravated first degree murder, respectively). Phillips stated that he had reviewed with his attorney a plea agreement that encompassed his Chautauqua County charges, along with the Chemung and Erie County charges, as well as pending federal charges (Armed Career Criminal in Possession of a Weapon and Theft of Firearms from a Licensed Firearms Dealer, 18 U.S.C. §§ 924(3), 922(g)(1), 922(u), & 924(I)) in the Western District of New York. See Memorandum of Understanding, A.42-43. It was agreed that at the time of sentencing, pending Chautauqua County charges of Hindering Prosecution against Crowe, and Endangering the Welfare of a Child and Resisting Arrest against Wright, would be dismissed. A.43.

In response to questioning by Justice Kloch, Phillips stated that he had sufficiently discussed the guilty plea with counsel, and that he did not need any further time to do so. A.16. When asked if he was satisfied with the legal services counsel had provided him, he replied, "I am." A.17. The trial court then led Phillips through a series of questions, beginning with how he became a fugitive from justice in the summer and fall of 2006, when the New York State Police and other agencies in New York and Pennsylvania searched for him. He was aware that law enforcement

-4-

was conducting surveillance of his family and friends in Chautauqua County, having observed individuals and vehicles surrounding the homes of his family and friends in the Town of Pomfret. Phillips admitted suspecting that they were police officers with unmarked police vehicles. A.18. Concerned that pending criminal or family court charges would affect his family's custody rights, he assured his family that he would take care of the police. A.19. To that end, he burglarized a nearby gun store on August 26 or 27, 2006, and acquired approximately 41 weapons, including a .308-caliber "Cetme" rifle. Id.

Phillips acknowledged that on August 31, 2006, Phillips, was near his family's home at 4710 Bachelor Hill Road in Pomfret. A.19. When asked if he knew that the .308 rifle could cause fatal wounds, he responded, "Indeed I did." A.20. He stated that he was "very" familiar with firearms and knew that the Cetme, a very powerful rifle, would most likely cause a person's death if the bullet "hit in the right place." Id. He affirmed that he intentionally fired that rifle at two individuals, whom he later would learn were Longobardo and Baker, acting in their capacity as state troopers at the time they were shot. A.21.

After his capture, Phillips revealed the location of the rifle to the New York State Police and subsequently learned that a ballistics examination identified the Cetme .308-caliber rifle as the weapon that caused the officers' wounds. A.22. Justice Kloch

-5-

confirmed that Phillips was aware of, and had taken into consideration, the following inculpatory evidence before making his decision to plead guilty: (1) his statements to Todd Nelson that he, Phillips, was angry with the police; (2) written correspondence from Phillips, in the prosecution's possession, indicating Phillips' desire to obtain a .308 caliber rifle to use in shooting the police, and (3) Phillips' post-arrest statements to police implicating him in the shootings of the troopers. A.22-23.

The trial court again confirmed that Phillips had reviewed the terms of the plea agreement with his attorney, and he responded "yes." A.24. Phillips denied that any promises other than those specified in the agreement had been made to him, and confirmed his understanding of the mandatory no-parole sentence that would receive in connection with the first degree murder conviction. Phillips confirmed that he was pleading guilty freely and voluntarily, and that no one had forced him to enter into the plea. A.25. He agreed that he was doing it because it was "true" and it was in his best interest. A.24.   Answering the trial court's questions, Petitioner indicated his full understanding of the rights he was giving up by pleading guilty, including his right to a jury trial at which he could confront and cross-examine his accusers, call witnesses on his own behalf, and where the prosecution must prove his guilt beyond a reasonable doubt. Phillips also understood that by pleading guilty, he was

surrendering his right to attack the validity of any statement or confession he made, as well as any of the evidence the prosecution would present at trial. Phillips stated that he understood that, ordinarily he had an absolute right to appeal his judgment of conviction, but under the plea agreement, he as waiving his right to appeal and challenge any pre-plea, plea, or sentencing errors. Phillips stated that he had discussed the appellate-rights waiver with his attorney, and did not need additional time to discuss the waiver with counsel. A.26-27. Justice Kloch then accepted Phillips' guilty pleas to aggravated first-degree murder, and attempted aggravated first-degree murder. A.27.

Phillips was remanded to custody pending the completion of a pre-sentence investigation. A.27.

### D.   Petitioner's Motion to Withdraw the Guilty Plea

On December 15, 2006, in Erie County Court, Phillips filed a pro se motion to withdraw his guilty plea on several grounds. First, he claimed that in his post-arrest interview with Investigator Newell, he had stated he did not know the men whom he had shot were police officers. According to Phillips, he believed the men outside his family's home were bounty hunters, whom he did not intend to kill, but only intended to humiliate by leaving them naked, trussed with duct tape, to be discovered by the police. Phillips thus contended that he had a viable defense to the charges of aggravated murder because he did not intend to kill anyone, and

-7-

he did know have reason to know his victims were police officers.
Phillips maintained that when he was originally interrogated by
Newell, Newell threatened to ensure that Phillips' daughter
(Wright) and her mother (Crowe) would be convicted of "accessory to
murder" and "felony assault on a police officer". Petitioner's
Supporting Affidavit to Petition ("Pet'r Aff.") at 1-2 (Dkt. #1).
The statement itself, however, does not indicate the specific
charges against Crowe and Wright.

Phillips stated that a few days later, he met with Attorney
Rich, who (1) confirmed Newell's false account of the charges
against his family; (2) did not discuss his charges or any defenses
that may have been available to him based upon his confession to
Newell; (3) advised him that he should tell the court that he only
wanted him (Attorney Rich) in all of his cases; and (4) assured him
that he could not win at trial and that, if he lost, the "feds"
could give him the death penalty or put him in a "supermax" prison.
Id.

Phillips maintained that he never saw or signed the written
Memorandum of Understanding between him and the Chautauqua County
District Attorney's Office. Prior to entering the guilty pleas,
stated Phillips, Attorney Rich provided him with a "format" that
explained how to respond to the trial court's questions. Id.
Phillips states that when he refused to comply with the format,

-8-

Rich became angry and warned that if Phillips alerted the court, his family would be prosecuted. Id.

Second, Phillips contended that defense counsel-knowing that he did not want to plead guilty because he would have to admit untrue facts-threatened Phillips that if he did not plead guilty, his relatives would be prosecuted on charges of accessory-to-murder, and that he might face the death penalty in a federal prosecution. Third, Phillips maintained that he was not guilty of intentional aggravated murder. Fourth, he contended that the prosecutor had made promises (not identified in Phillips' motion) as part of the plea agreement that did not appear on the record, such as verbally agreeing to place him in a prison close to home. Id. Finally, Phillips demanded dismissal of Rich as his attorney. See A.29-32.

Attorney Rich submitted a letter to Justice Kloch, alerting him that Phillips would be filing a motion to withdraw his plea based upon counsel's alleged ineffectiveness and coercion. See A.33-34. Attorney Rich requested to be relieved of his assignment, in light of Phillips' allegations. The District Attorney submitted an affidavit opposing Phillips' motion, attaching a letter from Phillips, sent after the guilty plea, demanding that the prosecutor provide an affirmation from the Commissioner of New York State Department of Correctional Services ("DOCS") guaranteeing him certain conditions of confinement in prison. A.36-41. The

prosecutor attached letters which had been sent to Town of Pomfret Court and Village of Fredonia Court authorizing dismissal of the charges against Crowe and Wright, respectively, after Phillips had been sentenced. See A.39.

### E.    Sentencing

On December 19, 2006, Phillips appeared with Attorney Rich before Justice Kloch for sentencing. See A.68-82. Justice Kloch had not received Phillips' motion to withdraw the guilty plea, but had received defense counsel's letter describing the motion. Justice Kloch expressed his opinion that defense counsel had "done a very fine job of representing" Phillips, noting that he had been "very diligent, . . . very accommodating to the [c]ourt", and had gone over to see Phillips "many times." A.70. Justice Kloch noted that he had asked Phillips "on many occasions whether or not [he] was happy with this attorney," and that Phillips had indicated, under oath, he was satisfied with counsel's representation. A.70-71. Justice Kloch stated, "I see no reason why [Phillips was moving to withdraw his plea] other than probably your concern about the fact that you are before the [c]ourt now facing sentence and the sun is going down in your life, and you are concerned about that." A.71. Justice Kloch then summarily denied Petitioner's motion to withdraw his guilty plea. Id.

With regard to Phillips' demand for assurances from DOCCS about his housing conditions and his threat to withdraw his plea if

these were not provided, Justice Kloch noted that he had spoken with counsel for DOCCS. Justice Kloch stated, "They are awaiting another convict. . . That's all . . . . [C]ounsel said when he's ready to be delivered into the State, give us a call so we can make arrangements, just like any other prisoner." A.72. Phillips simply replied, "Right." Id. Noting that he did not see any reason for concern in that regard, Justice Kloch clarified that neither the court nor the District Attorney's Office controlled DOCS, and told Phillips, "If you have a problem with [them], you bring an Article 78 proceeding just like any other convict." A.73.

When Attorney Rich requested an adjournment to "formally put together a paper to withdraw his plea[,]" Justice Kloch inquired as to the basis of such a motion. A.74. Defense counsel understood Phillips' handwritten motion to be that his statements during the plea colloquy were untrue and that "he's not guilty at least of the aggravated murder, attempted aggravated murder both [in Chautauqua County] and in Chemung County." A.74. Justice Kloch stated,

> [M]y understanding from Justice Buckley down in Chemung is you pled very guilty. You went beyond guilt to very guilty. When I took your plea down in Erie County, it was guilty as hell. When I asked you in here as we went through the colloquy if you knew that this weapon was dangerous, you said it was a very dangerous, very powerful gun. We went through the colloquy, and you knew what you were doing.
>
> And there is no basis for withdrawal of the plea, so let me save you the time, Mr. Phillips, unless I hear something original . . . ."

-11-

A.74-75. Phillips protested that he had given a statement to state police investigators that "stipulate[d] in the documents that I never intentionally tried to kill anyone." A.75. Justice Kloch reminded Phillips that they had gone through a colloquy with Phillips under oath:

> You responded that you knew police officers were in that location, and you knew the likelihood that these were police officers, . . . and you shot at them. You indicated to me that you shot at them, and that you were cognizant of the fact that depending upon where you hit them, it would kill them. And you told me you hit one in the leg and one in the back or side. I believe you indicated the side. So that's sufficient for me as far as a knowing, knowledgeable plea.

A.75-76. Phillips asserted that he had given the statement to "get them [his family] out of trouble" and that he had "indicated specifics" that proved he did not know the victims were police officers (e.g., the were in full camouflage and wearing face paint). A.76. Phillips announced, "I had no intention of killing anyone. My intentions were to humiliate them, to tie them up with duck [sic] tape, and call 911 and tell the State Police that there were intruders." Id. Justice Kloch responded, "[Y]ou went through a colloquy before under oath. . . . I accepted a knowledgeable guilty plea from you, and that closes the book on that." A.77.

Prior to sentencing, Phillips said, "I would like to apologize to the families [of the troopers]. . . . As I said before, I never meant to kill anybody. I never meant to shoot anybody. Sorry." A.80. Justice Kloch noted that Phillips had "humiliated [him]self"

-12-

by his actions and commented that Phillips was "about to become very irrelevant." A.81. He then imposed the sentences agreed upon as part of the plea-concurrent terms of life without parole for the murder count, and forty years to life for the attempted murder count. A.81-82.

### F.   Direct Appeal

Represented by new counsel on direct appeal, Phillips asserted that he (1) failed to properly allocute to the crimes to which he was pleading guilty; (2) the trial court improperly denied his motion to withdraw his guilty plea without conducting a hearing regarding his allegations of coercion; and (3) the trial court abused its discretion in denying his motion to dismiss his attorney. In a decision entered on November 14, 2008, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction. People v. Phillips, 56 A.D.3d 1163 (4th Dept. 2008). The Fourth Department held that although Phillips had preserved his challenge to the factual sufficiency of the plea allocution, it was encompassed by his waiver of the right to appeal. Id. at 1164. (citations omitted). In any event, the claim was meritless, because during the plea allocution Phillips admitted that he knew police officers were surveilling the location where the crimes occurred, that the weapon he used could inflict a fatal wound, and that he shot the two men. Thus, that court found, the plea allocution was factually sufficient because it established

that Phillips "intended to kill the victims and that he 'knew or reasonably should have known' that they were police officers." Id. (quoting N.Y. PENAL LAW § 125.26(1)(a)(i)).

With regard to the voluntariness of Phillips' plea, the Fourth Department found that it was entered into knowingly and intelligently, commenting that the "extensive plea agreement" resolved not only the charges underlying the direct appeal, but also charges pending against him in Erie County, Chemung County, and in United States District Court. Id. In addition, the plea agreement ensured that the charges pending against his family members would be dismissed. Id.

The Fourth Department further held that the trial court did not abuse its discretion in denying Phillips' motion to withdraw his guilty plea, because he provided no basis to do so. Id. (citations omitted). Rejecting the contention that the trial court had abused its discretion by denying his motion to discharge Attorney Rich as counsel, the Fourth Department held that the claim was "encompassed by the plea and the waiver of the right to appeal except to the extent that the contention implicates the voluntariness of the plea, and that exception does not apply here[.]" Id. (noting that Phillips "stated at the time of his plea that he was satisfied with the services of his attorney, who represented him in connection with the pending charges in all of

the respective jurisdictions" and had "failed to show good cause for substitution of counsel") (citations omitted).

Leave to appeal was denied by the New York Court of Appeals on February 3, 2009. <u>People v. Phillips</u>, 12 N.Y.3d 761 (2009).

### G. The First Motion to Vacate

In <u>pro</u> <u>se</u> papers dated September 9, 2008, Phillips moved to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10, arguing that (1) the evidence before the grand jury was insufficient; (2) his trial counsel was ineffective and induced him to plead guilty by making false statements; (3) his guilty plea was not knowing, voluntary, and intelligent; and (4) the trial court abused its discretion by not only denying his motion to withdraw the guilty plea, but also denying the motion to dismiss his attorney. <u>See</u> Resp't Ex. I; <u>see</u> <u>also</u> Resp't Exs. J & K. In an order entered on January 28, 2009, after the Fourth Department had affirmed the conviction, Justice Kloch denied the C.P.L. § 440.10 motion, finding that the issues raised in the motion had been ruled upon by the Fourth Department and that there were "no additional issues to be resolved by [him]." <u>See</u> Resp't Ex. L.

Although Phillips mailed the Chautauqua County District Attorney a letter attaching a draft of an application for leave to appeal the denial of his first C.P.L. § 440.10 motion (Resp't Ex. M), Phillips did not perfect an appeal in the Fourth

Department. Neither the Fourth Department nor the District
Attorney's Office have anything in their records demonstrating that
Phillips filed the leave application. Phillips states that he was
unable to perfect an appeal in a timely manner because his copy of
the C.P.L. § 440.10 motion was stolen when guards ransacked his
cell shortly after he filed the C.P.L. § 440.10 motion.

### H.    Petitioner's Second Motion to Vacate the Judgment

On December 10, 2009, Phillips filed a second pro se motion to
vacate the judgment pursuant to C.P.L. § 440.10, reiterating the
claims raised in the original C.P.L. § 440.10 motion, and also
contending that his guilty plea was procured by a conspiracy
between defense counsel, the prosecutor, and the trial court. See
Resp't Ex. N. The District Attorney filed an affirmation opposing
the motion (Respt' Ex. O), and Phillips submitted reply papers
(Resp't Ex. P).

In an order entered on February 25, 2010, Justice Kloch denied
the motion, noting that he had been "painstaking in [his] efforts
to ensure that the protections afforded to all citizens were
applied to [Phillips]." Resp't Ex. Q at 2. Justice Kloch held that
Phillips had "fail[ed] in his effort here to show that the court
was not diligent in safeguarding his constitutional rights." Id. at
2. Justice Kloch summarily rejected Phillips' allegations of
ineffective assistance of counsel and prosecutorial as "without

merit" and stated that there were no additional issues that had not already been ruled upon by the Fourth Department. Id.

Phillips sought leave to appeal to the Fourth Department (Resp't Ex. R), and the District Attorney filed an affirmation in opposition (Resp't Ex. S), to which Phillips replied (Resp't Ex. T). In an order dated June 22, 2010, the Fourth Department denied leave to appeal. See Resp't Ex. U.

## I.   The Federal Habeas Corpus Proceeding

Phillips instituted this pro se federal habeas proceeding on November 30, 2010. In the original petition and the supplemental petition, reading the claims broadly, Phillips argues that (1) his conviction was obtained by use of a coerced confession; (2) his trial counsel provided ineffective assistance, and operated under a conflict of interest due to counsel's interest in obtaining a judgeship in Chemung County; (3) his guilty plea was coerced by counsel and induced by counsel's false statements; (4) the factual allocution was insufficient to support the guilty plea; and (5) the trial court improperly denied his motions to withdraw the guilty plea and to dismiss counsel.

## III. Timeliness

Respondent argues that Phillips' habeas petition should be dismissed as untimely pursuant to 28 U.S.C. § 2244(d)(1)(A), a provision in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 121. AEDPA amended

28 U.S.C. § 2244 to provide a one-year limitations period for the filing of state habeas corpus petitions. The time period runs from the latest of certain enumerated events–here, "the date on which the judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period "does not begin to run until the completion of direct appellate review in the state court system and either the completion of <u>certiorari</u> proceedings in the United States Supreme Court, or if the prisoner elects not to file a petition for <u>certiorari</u> the time to seek direct review via <u>certiorari</u> has expired." <u>Williams v. Artuz</u>, 237 F.3d 147, 151 (2d Cir.), <u>cert.</u> <u>denied</u>, 534 U.S. 924 (2001). Since a petitioner has ninety days from the entry of judgment in the underlying state action to seek <u>certiorari</u> from the Supreme Court, <u>see</u> SUP. CT. R. 13(3), Phillips' final date of conviction, for the purpose of assessing the start of the one year limitations period under AEDPA, is the date upon which that ninety-day deadline expired. In this case, that date is May 4, 2009 (February 3, 2009, the date on which the New York Court of Appeals denied leave to appeal, plus 90 days.).   Absent any statutory tolling that might be available under 28 U.S.C. § 2254(d)(2), the limitations period for Phillips ran from May 4, 2009, to May 4, 2010.

Although Phillips' petitions were filed on December 6, 2010, Respondent correctly acknowledges that under the "prison mailbox

rule," a habeas court deems the petition filed on the date when prisoner turned it over to correctional authorities for mailing. See Houston v. Lack, 487 U.S. 266, 276 (1988). Respondent notes that affidavits attached to the petition and supplemental petition were sworn to on November 30, 2010, which is the correct date of filing for purposes of the prison mailbox rule. Thus, for Phillips' petition to be timely, tolling of the limitations period is required from May 4, 2010, to November 30, 2010. In other words, a total of 210 days must be tolled.

## A.    Statutory Tolling Under 28 U.S.C. § 2244(d)(2)

Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. . . ." 28 U.S.C. § 2244(d)(2). Phillips' first C.P.L. § 440.10 motion did not toll the statute of limitations, as Respondent contends, because it ceased to be pending on January 28, 2009, well before the limitations period began to run on May 4, 2009. See Vasquez v. Martuscello, No. 11-CV-02263 (JFB), 2011 WL 6740556, at *3 (E.D.N.Y. Dec. 22, 2011) ("[A] a state court application that is decided well before the statute of limitations begins to run does not toll the statute of limitations.") (citing Lozada v. Cripps, No. 09 Civ. 8897(DAB)(THK), 2010 WL 7113583, at *5 (S.D.N.Y. Dec. 17, 2010) (C.P.L. § 440.10 motion, C.P.L. § 330.30 motion, and

state writ of habeas corpus did not toll AEDPA's statute of limitations because they were decided before the statute of limitations began to run), <u>rep.</u> <u>and</u> <u>rec.</u> <u>adopted</u>, No. 09 Civ. 8897(DAB), 2011 WL 3251576 (S.D.N.Y. July 28, 2011) .

Respondent concedes that Phillips' second C.P.L. § 440.10 motion did toll the limitations period for 193 days–from December 10, 2009 (the date it was filed), to June 22, 2010 (the date the Appellate Division denied leave to appeal). <u>See</u> <u>Clark v. Barkley</u>, 51 F. App'x. 332, 333-34 (2d Cir. 2002) (C.P.L. § 440.10 motion ceases to be "pending" when the Appellate Division has denied leave to appeal).  Noting that the Second Circuit applies the "prison mailbox rule" to state collateral motions, <u>see</u> <u>Fernandez v. Artuz</u>, 402 F.3d 111, 116 (2d Cir. 2005), Respondent explains that the tolling period began when Phillip filed his second <u>pro</u> <u>se</u> C.P.L. § 440.10 motion on the date written on the motion's front page: December 10, 2009. Under <u>Carey v. Saffold</u>, 536 U.S. 214 (2000), which held that the AEDPA tolling period includes the time between a lower state court's decision and the filing of a notice of appeal, Respondent agrees that Phillips' tolling period ended on June 22, 2010, the date that the Fourth Department denied leave to appeal the trial court's denial of the C.P.L. § 440.10 motion. Respondent argues that Phillips' petition is untimely because the total tolled time between December 10, 2009, and June 22, 2010, is only 193 days, 17 days shy of the 210 days of tolling required.

Respondent's calculations appear to be correct, and Phillips does not dispute them. Phillips, however, argues that he did not know his petition was untimely, that he did not act in bad faith, and that he is entitled to equitable tolling of the statutory limitations period. See generally Petitioner's Reply ("Pet'r Reply") (Dkt. #15).

**B.    Equitable Tolling**

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996). Recently, the Supreme Court confirmed that equitable tolling is applicable to the AEDPA statute of limitations. Holland v. Florida, ___ U.S. ___, 130 S. Ct. 2549, 2560, 177 L. Ed.2d 130 (2010). A petitioner is entitled to equitable tolling, however, only if he can show that he pursued his rights diligently and that some extraordinary circumstances prevented him from filing a timely petition. Id. at 2562. Accord, e.g., Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000); Valverde v. Stinson, 224 F.3d 129, 133–34 (2d Cir. 2000).

Phillips argues that he did not know his petition was untimely, implying that he was not aware of the applicable statute of limitations. A pro se litigant's misunderstanding of the law regarding the statute of limitations does not constitute "extraordinary or unusual circumstances" preventing him from filing

a timely petition. See Smaldone v. Senkowski, 273 F.3d 133, 138–39 (2d Cir. 2001) (attorney's mistaken belief as to tolling period does not give rise to the "extraordinary circumstances" required for equitable tolling); Hickey v. Senkowksi, No. 02 Civ. 1437(DC), 2003 WL 255319, at *4 (S.D.N.Y. Feb. 4, 2003) ("Plaintiff's mistake as to when his grace period began accruing is not a basis for equitable tolling."); Fennell v. Artuz, 14 F. Supp.2d 374, 377 (S.D.N.Y. 1997) (lack of education or familiarity with legal research does not warrant equitable tolling).

Next, Phillips alleges that he was prevented from filing a timely habeas petition because is subjected to repeated cell moves and is constantly disrupted by noisy inmates. See Pet'r Reply at 2 (Dkt. #15). "Generally, transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents do not by themselves qualify as extraordinary circumstances." Amante v. Walker, 268 F. Supp. 2d 154, 158 (E.D.N.Y. 2003) (citation omitted); see also Hizbullahankhamon v. Walker, 105 F. Supp.2d 339, 344 (S.D.N.Y. 2000) ("While solitary confinement does present an obstacle to filing a timely habeas petition, it does not qualify as an extraordinary circumstance."), aff'd, 255 F.3d 65 (2d Cir. 2001), cert. denied, 536 U.S. 925 (2002); Montalvo v. Strack, No. 99 Civ. 5087, 2000 WL 718439, at *2 (S.D.N.Y. June 5, 2000)

(holding that transfers between prison facilities do not constitute "extraordinary circumstances" for purposes of equitable tolling).

Phillips' allegation that guards ransacked his cell and stole his first C.P.L. § 440.10 motion warrants further discussion, however, as the Second Circuit has held that "[t]he intentional confiscation of a prisoner's habeas corpus petition and related legal papers by a corrections officer is 'extraordinary' as a matter of law." Valverde, 224 F.3d at 133 (citing Morello v. James, 810 F.2d 344, 347 (2d Cir. 1987) (holding that "intentional obstruction of a prisoners access to the courts" by means of confiscating his legal work product "is precisely the sort of oppression that [violates] the Fourteenth Amendment")). Phillips states that "[a]t some point not long after he sent such [i.e., the first C.P.L. § 440.10 motion] to the lower court, his cell was destroyed by guards and virtually all of his legal documents were taken and never returned." Id., ¶5. This allegation would place the timing of the destruction of his papers in the September 2008 timeframe, which is when he filed his first C.P.L. § 440.10 motion. Phillips, however, asserts that he filed his first C.P.L. § 440.10 motion in 2009, Pet'r Reply at 2, ¶5. (Dkt. #15). The discrepancies in the alleged date of the confiscation, and lack of other detail regarding the incident, are factors tending to call into question the credence of Phillips' account. Nevertheless, the Court accepts Phillips' allegation regarding the confiscation.

The Second Circuit explained in <u>Valverde</u> that "a person is plainly 'prevented' from filing a pleading for some period of time if he is deprived of the sole copy of that pleading," something that both the petitioner in <u>Valverde</u> and Phillips assert happened. <u>Id.</u> (finding that petitioner had shown "extraordinary circumstances" sufficient to withstand a motion to dismiss where he submitted an affirmation that the confiscation of Valverde's legal papers constituted 'misconduct on the part of the Correction Officer' and that this misconduct 'prevented him from filing his federal writ of habeas corpus within the one year [period of] limitation'" and there was "no evidence in the record rebutting these assertions"; remanding to district court to determine whether the confiscation of his legal papers "prevented" him from filing his petition on time).

Phillips was not able to obtain an extra copy of his C.P.L. § 440.10 motion from the trial court or from the District Attorney's Office in order to perfect his appeal. Thus, he was "required to abandon" that motion and construct another one; he made copies of the second motion and gave them to other inmates for safekeeping. Pet'r Aff., ¶8 (Dkt. #15). Phillips filed his second C.P.L. § 440.10 motion eleven (11) months after he learned that his first motion had been denied in January 2009.

Phillips contends that the guards' theft of his papers prevented him from perfecting the appeal of that motion for

exhaustion purposes and required him to draft another C.P.L. § 440.10 motion. Even though the document in question was not a habeas petition, destroying a prisoner's state motion is an "intentional obstruction of a prisoner's access to the courts" because a petitioner generally cannot obtain habeas relief on a claim unless he has fully exhausted his state remedies. See 28 U.S.C. § 2254(b)(1). Based upon the Second Circuit's decision in Valverde, Phillips' loss of the sole copy of his C.P.L. § 440.10 motion at the hands of prison officials could constitute an "extraordinary circumstance" for purposes of tolling AEDPA's limitations period. See Valverde, 224 F.3d at 133-34. Nonetheless, he still must demonstrate that he exercised "reasonable diligence" throughout the time he seeks to have tolled. Valverde, 224 F.3d at 134 ("[A]ssuming that these extraordinary circumstances occurred, preventing the petitioner from filing his petition for some length of time, we must still determine whether they 'prevented him from filing his petition on time.'")(quoting Smith v. McGinnis, 208 F.3d at 17 (emphasis added in Valverde). This standard calls for "reasonable diligence, not maximum feasible diligence," Holland v. Florida, 130 S. Ct. at 2565 (internal quotation marks and citation omitted), "which a petitioner may satisfy by showing that he "'act[ed] as diligently as reasonably could have been expected under the circumstances,'" Harper v. Ercole, 648 F.3d 132, 139 (2d Cir. 2011) (quoting Baldayaque v. United States, 338 F.3d 145,

153 (2d Cir. 2003) (emphasis in original; alteration in <u>Harper</u>)).
The petitioner must demonstrate that "'he acted with reasonable
diligence throughout the period he seeks to toll[.]'" <u>Harper</u>, 648
F.3d at 139 (quoting <u>Belot v. Burge</u>, 490 F.3d 201, 205 (2d Cir.
2007)).

The question, then, is whether Phillips acted with reasonable
diligence from the time his legal papers were confiscated in the
time-period between September 2008, and January 2009, to the time
he actually filed his petition on November 30, 2010. <u>E.g.</u>, <u>Muller</u>
<u>v. Greiner</u>, No. 03 Civ. 1844(SAS), 2004 WL 97687, at *3 (S.D.N.Y.
Jan. 20, 2004). The Court notes that at least eleven (11) months
elapsed between the time he discovered he was unable to perfect the
appeal of his first C.P.L. § 440.10 motion (which had been denied
in January 2009) because prison guards had confiscated his legal
papers and the time he filed his second C.P.L. § 440.10 motion on
December 10, 2009. If, as Phillips states at one point in his
pleadings, that the motion was confiscated at the time he filed it
(i.e., September 2008), then approximately thirteen (13) months
passed before he filed his second C.P.L. § 440.10 motion. Courts in
this Circuit have found similar delays in filing to demonstrate a
lack of "reasonable diligence" in the equitable tolling context.
<u>See</u>, <u>e.g.</u>, <u>Lindo v. Lefever</u>, 193 F. Supp.2d 659, 663 (E.D.N.Y.
2002) (finding that petitioner did not act with the reasonable
diligence necessary to receive equitable tolling where, after being

notified that certain claims were unexhausted, he waited two months before filing the necessary C.P.L. § 440.10 motion, and after that motion ceased to be pending, he waited approximately nine months before filing the federal habeas petition).

Phillips has not pointed to specific occurrences during this time period that would qualify as additional extraordinary circumstances interfering with his ability to prepare a second C.P.L. § 440.10 motion. Phillips states that he is surrounded by noisy and disruptive inmates, and is subject to "constant cell moves and destruction and theft of his property[,]" Pet'r Reply, ¶5 (Dkt. #1), but he has not identified any other particular instances of theft or destruction apart from the incident involving the first C.P.L. § 440.10 motion. General allegations unsupported by evidence are insufficient to demonstrate "extraordinary circumstances" or to demonstrate other facts necessary to a finding of equitable tolling. See Collins v. Artus, 496 F. Supp.2d 305, 313 (S.D.N.Y. 2007) (Chin, D.J.) ("To establish extraordinary circumstances, a petitioner must support his allegations with evidence; he cannot rely solely on personal conclusions or assessments. Further, the party must show that he was unable to pursue his legal rights during the entire period that he seeks to toll.") (citation omitted); see also Walker v. Johnston, 312 U.S. 275, 286 (1941) (habeas petitioner has the burden of "sustaining his allegations by

a preponderance of evidence" on collateral review); accord, e.g., Whitaker v. Meachum, 123 F.3d 714, 716 (2d Cir. 1997).

The remaining factors Phillips cites as hindering his preparation of a timely petition are nuisances that are part and parcel of prison life and do not constitute "extraordinary circumstances". See, e.g., Gant v. Goord, 430 F. Supp.2d 135, 139 (W.D.N.Y. 2006) ("In general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances.") (citations omitted); Lora v. United States, 07 Civ. 6936, 2007 WL 4966776, at *3 (S.D.N.Y. Nov. 21, 2007) ("Difficulties in pursuing a habeas petition created by the routine restrictions of prison life, however, are not extraordinary circumstances for purposes of equitable tolling.") (quotations omitted), report and recommendation adopted, 2008 WL 577174 (S.D.N.Y. Mar. 3, 2008).

Finally, "the fact that it took [Phillips] some time to research the law is not an extraordinary circumstance that would justify equitable tolling." Prescod v. Brown, No. 10 Civ. 2395(SHS)(AJP), 2011 WL 182063, at *5 (S.D.N.Y. Jan. 20, 2011) (citing, inter alia, Ormiston v. Nelson, 117 F.3d 69, 72 n. 5 (2d Cir. 1997) ("Mere ignorance of the law is, of course, insufficient to delay the accrual of the statute of limitations.");

see also Plowden v. Romine, 78 F. Supp.2d 115, 120 (E.D.N.Y. 1999) ("There is no limiting principle to [petitioner's] argument that simple ignorance-absent any showing of diligence on his part or allegations of impediments to his staying informed about this case-should provide a basis for equitable tolling; to hold that the statute of limitations should be extended in this case would allow the statute to be extended indefinitely."). Under these circumstances, the Court cannot conclude that Phillips exercised "reasonable diligence" in taking at least eleven (11) months in which to construct what he deems a duplicate C.P.L. § 440.10 motion. See Walker v. Artuz, No. 98-2572, 2002 WL 34243994, at *3 (2d Cir. May 17, 2002) (unpublished opn.) ("[N]either Walker's diligence in filing his first habeas petition nor his pro se status is sufficient to excuse his failure to act with reasonable diligence in waiting more than ten months after his first petition was dismissed to file his second habeas petition, particularly given the fact that the claims he raised in that petition had been exhausted in his direct appeal and, thus, were available to him at the time the first petition was dismissed.").

The next portion of time for which Phillips must show "reasonable diligence" is the period of time after his second C.P.L. § 440.10 proceeding was completed. As noted above, that motion ceased to be "pending" for purposes of 28 U.S.C. § 2244(d)(2) on June 22, 2010, when the Fourth Department denied

leave to appeal. However, Phillips waited another five (5) months before filing his federal habeas petition on November 30, 2010. Again, apart from the alleged cell moves and noisy fellow inmates, Phillips has not identified any particular occurrences during this time-period that prevented him from timely filing his habeas petition. Cf. Rush v. Lempke, No. 09-cv-3464 (JFB), 2011 WL 477807, at *8 (E.D.N.Y. Feb. 2, 2011) (petitioner could not show reasonable diligence where he waited seven months after he was denied final leave to appeal before requesting an extension of time to file his habeas petition).

For a limitations period to be tolled, a petitioner "must have acted with reasonable diligence *throughout* the period he seeks to toll." Smith, 208 F.3d at 17 (emphasis added). Even if the circumstances (e.g., cell moves and disruptive inmates) that Phillips alleges may have at times interfered with the preparation of his second C.P.L. § 440.10 motion and habeas petition, he has not described circumstances that interfered with his preparation of pleadings for any substantial portion of the sixteen-odd months which tolling is required. That Phillips alleges he did not know his petition was untimely suggests that he was not aware of how much time had elapsed on the statute of limitations; however, as discussed above, ignorance of the law is not an "extraordinary circumstance" and by definition, his failure to keep apprised of the status of the limitations period shows a lack of reasonable

diligence. Acting with "reasonable diligence", Phillips could have completed his second C.P.L. § 440.10 petition and filed a less-polished, but timely, petition. Because the Court finds that Phillips is ineligible for equitable tolling, the petition and supplemental petition are dismissed as time-barred. See Belot v. Burge, 490 F.3d 201, 207-08 (2d Cir. 2007) (district court dismissed as untimely petitioner who filed a two-day-late petition, and denied equitable tolling of habeas limitations period, on grounds that the petitioner should have begun his preparation earlier and filed an unpolished, but timely, petition, rather than waiting until his law library access was restored following prison lockdown to enable him to file a more polished, but untimely, petition; circuit court held that this was not an abuse of discretion).

## IV.  Conclusion

For the reasons discussed above, the petition and supplemental petition are dismissed with prejudice. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2).

SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

DATED:     February 10, 2012
           Rochester, New York

-31-